# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN B. WEISS,<br><br>                      Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>                      Defendant. | CASE NO. 12-CV-719 CAB (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE: (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |

## I.
## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment. Plaintiff Karen B. Weiss brings her motion under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g)[1], seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. Plaintiff asks the Court to grant her motion for summary judgment, reversing the Commissioner's decision, which

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain judicial review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

1  Plaintiff argues fails to assign the proper weight to the opinions of Plaintiff's treating and examining
2  physicians. The Commissioner concurrently seeks summary judgment to affirm the ALJ's decision.
3        The Court finds the motions appropriate for submission on the papers and without oral
4  argument pursuant to Local Rule 7.1(d)(1). After careful review of the moving and opposition papers,
5  the administrative record, the facts, and the law, **the Court RECOMMENDS** Plaintiff's motion for
6  summary judgment be **DENIED** and Defendant's cross motion to affirm the ALJ decision be
7  **GRANTED.**

## II.

## PROCEDURAL HISTORY

10        On November 25, 2008, Plaintiff filed an application for Social Security Disability Insurance
11  Benefits alleging disability on June 3, 2003. *See* Administrative Record ("AR") at 23. Her
12  application was denied initially and also on reconsideration. AR at 23. On November 4, 2009, a
13  request for a hearing was timely filed. AR at 23. Plaintiff testified at a hearing held on June 23, 2010.
14  *Id.* Also appearing at the hearing were impartial medical expert Arthur Lorber, M.D. and impartial
15  vocational expert Sandra M. Fioretti. *Id.* The ALJ submitted his decision on August 17, 2010, finding
16  the claimant was not entitled to disability insurance benefits. AR at 33. The decision of the Social
17  Security Administration became final when the Appeals Council denied Plaintiff's request for review.
18  AR at 1-4.

19        On March 26, 2012, Plaintiff filed the instant complaint pursuant to §405(g) of the Act in order
20  to obtain judicial review of a "final decision" from the Commissioner of the Social Security
21  Administration ("Commissioner") denying her claim for Disability Insurance Benefits ["DIB"].
22  Defendant filed an answer to the complaint on July 26, 2012. [ECF Nos. 1, 12.]

23        On August 30, 2012, Plaintiff filed a motion for summary judgment. [ECF No. 17.]
24  Defendant filed a cross-motion for summary judgment (hereinafter "DM") on October 5, 2012**.** [ECF
25  No. 20.] Both motions were found suitable for decision without oral argument and taken under
26  submission.

**III.**

**DISCUSSION**

**1. Legal Standard**

A claimant is entitled to disability benefits if, considering her age, education and work experience, she is unable to perform the work she previously performed and also the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. **Step one** determines whether the claimant is engaged in "substantial gainful activity." If she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to **step two**, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" which provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520 c), 416.920 c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521 (b), 416.921 (b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision,

co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id.*

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the **third step**, which determines whether the impairment is equivalent to one of a number of listed impairments the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520 (d), 416.920 (d); 20 C.F.R. Part 404, Appendix 1 to Subpart P. If the impairment meets or exceeds one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the **fourth step**, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520 (e), 416.920 (e). If the claimant cannot perform her previous work, the **fifth** and **final step** of the process determines whether she is able to perform other work in the national economy in view of her age, education, and work experience. The claimant is entitled to disability benefits only if she is not able to perform other work. 20 C.F.R. §§ 404.1520 (f), 416.920 (f).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985)). If the evidence supports more than one rational

interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the reviewing court finds substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id.*

**2.    The ALJ's Decision**

After considering testimony and the evidence from the administrative record, the ALJ determined Plaintiff retained the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(b) except: the claimant can stand and walk for a maximum of two hours in an 8-hour workday for 30 minutes at a time; she can sit for six hours in an 8-hour workday for 30 minutes at a time with the ability to change her position; she can lift and carry 10 pounds frequently and 10 pounds occasionally; she can push and pull with the lower extremities on an occasional basis; she can occasionally climb, bend, stoop, kneel, crouch, or squat; she cannot crawl; she cannot climb ladders, ropes or scaffolds; she cannot work at heights or with moving machinery; she cannot balance; she cannot work with vibration; and she should avoid extreme exposure to cold and heat." [AR at 11]

A residual functional capacity ("RFC") is not a medical determination but an administrative finding reserved to the Commissioner based on consideration of all relevant evidence. *See* Social Security Ruling 96-5p; 20 C.F.R. section1527(e). When determining the residual functional capacity, the ALJ must consider medical evidence, the testimony of lay witnesses and effects of symptoms. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). For Plaintiff's residual functional capacity, the ALJ used the findings of both the state medical consultant, Dr. H. Han, and state medical expert, Dr. Arthur Lorber, to create "a blend of the two opinions." [AR at 30] Specifically, the ALJ found the "time restraints and the limitations pertaining to the lower extremities described by Dr.

1  Lorber are appropriate given the claimant's radiculopathy, her weight, and her symptoms associated
2  with the diabetes mellitus." [AR at 30]    Dr. Lorber's opinion with respect to Plaintiff's lower
3  extremities were: "she can stand and walk for two hours in an 8-hour workday for 30 minutes at a
4  time; she can sit for six hours in an 8-hour workday for 30 minutes at a time after which she could
5  stand at her workstation and move around or stand and walk...." [AR at 30]  The ALJ found the
6  "lifting limitations identified by Dr. Han are most appropriate given the ongoing back symptoms."
7  Dr. Han's opinion with respect to Plaintiff's lifting limitations were: "the claimant can occasionally
8  and frequently lift and/or carry 10 pounds." [AR at 30]

9        In the ALJ's recitation of the various evidence considered in crafting Plaintiff's residual
10 functional capacity and the weights assigned to it, the ALJ explained that Plaintiff's prescription drug
11 seeking behavior and exaggerated complaints of pain detracted from the credibility of her allegations
12 of pain and limitations. [AR 29]  The ALJ also articulated the reasons supporting his decision to give
13 more weight to the opinions of the state medical consultant and state medical expert than to the
14 opinions of Plaintiff's examining physicians, Dr. Jackson and Dr. Grossman, as well as her treating
15 physician, Dr. Spoonamore.  Specifically, the ALJ afforded some weight to the opinion of Dr. Thomas
16 Jackson, an Agreed Medical Examiner in Plaintiff's worker's compensation claim, because Dr.
17 Jackson's report was dated December 29, 2008, just two days before December 31, 2008, which was
18 Plaintiff's "date last insured" for purposes of disability insurance benefits. [AR 23, 29] However, the
19 ALJ only allotted some weight to Dr. Jackson's report because it was prepared in the context of
20 Plaintiff's worker's compensation claim with rules and definitions that are not interchangeable with
21 those used in Social Security cases. [AR 29]

22       Similarly, limited weight was given to the report of Dr. Grossman, Plaintiff's qualified medical
23 examiner for worker's compensation purposes, because in addition to being prepared with worker's
24 compensation criteria in mind, the report conflicted with the residual functional capacities
25 recommended by the state consultant and state medical expert. [AR 31] For example, Dr. Grossman
26 indicated Plaintiff could "stand and/or walk for less than four-hours in an 8 hour workday" while the
27 state medical expert, Dr. Lorber, opined Plaintiff could stand and walk for *two hours* in an 8-hour
28 workday for 30 minutes at a time.  Dr. Grossman also opined Plaintiff could "lift and carry 20 pounds

1  occasionally and 10 pounds frequently" while the state consultant, Dr. Han, recommended a limit of
2  "occasionally and frequently lift and/or carry *10 pounds*." [AR 31]
3        Finally, very little weight was given to the opinion of Plaintiff's treating physician, Dr.
4  Spoonamore, who opined Plaintiff "could not sit for more than 15 minutes at a time or stand for longer
5  than 10 minutes" because the limitations were contradicted by other sources occurring after Dr.
6  Spoonamore's evaluation. In addition, his limitations were intended to be temporary for worker's
7  compensation purposes. [AR 31]
8        After considering all the evidence, the ALJ determined Plaintiff was unable to perform past
9  relevant work as a general duty nurse, private nurse or office nurse because Plaintiff did not have the
10 residual functional capacity to perform the full range of unskilled light work. [AR 32-33]
11 Accordingly, at step five of the sequential evaluation process, the ALJ determined Plaintiff was able
12 to make an adjustment to other work in the economy, namely representative unskilled, sedentary
13 occupations such as charge account clerk, button assembler and order clerk for food and beverage.
14 [AR at 33] As a result, the ALJ found Plaintiff was not disabled during the time of her alleged onset
15 date - June 3, 2003 until December 31, 2008 - the date she was last insured. [AR at 33]

16 **3.   Analysis**
17     **a. Plaintiff's Contentions**
18       Plaintiff contends the ALJ improperly rejected the opinions of her examining and treating
19 physicians. Specifically, Plaintiff contends the ALJ did not properly weigh the opinions of: (1)
20 examining physician Dr. Thomas Jackson who stated Plaintiff could not engage in prolonged standing
21 or sitting [ECF No. 17-1 at 3:5-7]; (2) examining physician Dr. Brian Grossman who opined Plaintiff
22 could stand and walk up to 4 hours in an 8-hour work day and sit up to 4 hours in an 8-hour work day
23 [ECF No. 17-1 at 6:8-12]; and (3) treating physician Dr. Mark Spoonamore who restricted Plaintiff
24 to sitting no more than 15 minutes and standing no more than 10 minutes without lying down in
25 addition to a lifting limitation of no more than 5 pounds. [ECF No. 17-1 at 10:6-11.] Plaintiff asks the
26 Court to reverse the ALJ's decision and award benefits. In the alternative, Plaintiff requests remand
27 so that the ALJ may apply different weights to the opinions of her examining and treating physicians.
28     **B. Defendant's Opposition**

1  Defendant argues substantial evidence supported the ALJ's Residual Functional Capacity
2  Determination. Specifically, Defendant contends the ALJ applied the proper weight and
3  consideration to the opinions of Plaintiff's examining and treating physicians and rejected
4  contradictory limitations where appropriate. [ECF No. 20-1 at pp. 6-9]

### C. Weight of Treating Physician's Opinion [2]

#### 1. Dr. Jackson (Examining Physician)

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *See Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1995). Accordingly, Plaintiff contends the ALJ improperly discounted the opinion of one of Plaintiff's examining physicians for the opinions of the state medical consultant and state medical expert, by determining Plaintiff "can sit for six hours in an 8-hour workday for 30 minutes at a time with the ability to change her position." [ECF No. 17-1 at 4.] Specifically, Plaintiff argues the ALJ improperly determined Plaintiff's residual functional capacity to include six hours of sitting when Plaintiff's examining physician, Dr. Jackson, stated Plaintiff should be precluded from "prolonged" sitting or standing. [AR 1172] Plaintiff advises the Court that Social Security Ruling 83-12 construes six hours of standing, sitting or walking to be prolonged.

In opposition, Defendant argues Dr. Jackson's report did not define the word "prolonged" or provide a numerical equivalent for the word, and therefore urges the Court to refrain from importing a Social Security definition into material intended for use in a worker's compensation context. [ECF No. 20-1 at p.6.]

Terminology used in California worker's compensation claims is not equivalent to terminology used in Social Security disability cases. *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002)(citing *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). For example, in *Desrosiers*, the Ninth Circuit found error where the ALJ improperly equated the worker's compensation preclusion from heavy

---

[2] Title II distinguishes among the opinions of certain physicians and assigns less weight to those doctors that do not treat or examine the claimant at issue: "(1) those who treat the clamaint (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the clamant (nonexamining physicians)."*Lester,* 81 F.3d at 830.

1  work with a Social Security preclusion from heavy lifting, explaining that the categories of work under
2  Social Security "are measured quite differently" from those in the worker's compensation system.
3  *Desrosiers*, 846 F.2d at 576.  Here, the term "prolonged" as used by Dr. Jackson must be given its
4  common meaning; "to lengthen in time."  *See* Websters Ninth New Collegiate Dictionary 941 (9th ed.
5  1983).  The Ninth Circuit has made it clear that a term of art used in the worker's compensation
6  system is not interchangeable with a seemingly similar term used in the Social Security context.  The
7  ALJ had no obligation to attempt to translate the word "prolonged" into the language of Social
8  Security.  *See Booth*, 181 F. Supp. 2d at 1106 ([T]he ALJ's decision need not contain an explicit
9  'translation'....").  Moreover, because Dr. Jackson's report was written for worker's compensation
10 purposes, there is no evidence to suggest Dr. Jackson knew about or intended to impose a 6-hour
11 limitation on Plaintiff's sitting and standing in accordance with Social Security Ruling 83-12.  A
12 review of Dr. Jackson's report reveals he made no time-limit recommendations in his December 29,
13 2008 report.

14         The ALJ explained in his decision that "Dr. Jackson opined the claimant could do work above
15 the light exertion level and would be precluded from prolonged sitting and prolonged stationary
16 standing" [AR 29]   As a result, he afforded some weight to this opinion.  The ALJ's consideration
17 of Dr. Jackson's opinion is reflected in the exception to Plaintiff's residual functional capacity which
18 states: "she can sit for six hours in an 8-hour workday *for 30 minutes at a time with the ability to*
19 *change her position.*"  [AR 11]  *See Booth*, 181 F. Supp. 2d at 1105 ("The ALJ must evaluate medical
20 opinions couched in state worker's compensation terminology just as he or she would evaluate any
21 other medical opinion.")  The lower extremity exception to Plaintiff's residual functional capacity also
22 incorporates the opinion of  state medical expert, Dr. Arthur Lorber, who found Plaintiff "can stand
23 and walk for two hours in an 8-hour workday for 30 minutes at a time; she can sit for six hours in an
24 8-hour workday for 30 minutes at a time after which she could stand at her workstation and move
25 around or stand and walk...." [AR at 30] In according greater weight to Dr. Lorber, the ALJ explained
26 that "time restraints and the limitations pertaining to the lower extremities described by Dr. Lorber
27 are appropriate given the claimant's radiculopathy, her weight, and her symptoms associated with the
28 diabetes mellitus." [AR at 30, AR 44-45, AR 1162-66, 1172]  Although the contrary opinion of a non-

1 examining medical expert does not by itself constitute a specific legitimate reason for rejecting an
2 examining physician's opinion, it may constitute substantial evidence when it is consistent with other
3 independent evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). **IT IS**
4 **THEREFORE RECOMMENDED** the Court find the ALJ provided legitimate reasons supported
5 by substantial evidence in the record to afford some weight to the opinion of Dr. Jackson, an
6 examining physician of Plaintiff.

### 2. Dr. Grossman (Examining physician)

8 Plaintiff argues that, although the ALJ provided an explanation for assigning less weight to
9 the opinion of Dr. Grossman, the reasons given are neither specific nor legitimate because the ALJ
10 used the phrase "[f]or the reasons discussed above" in his written decision. Plaintiff further argues
11 the ALJ described Dr. Grossman's opinion as excessive when Dr. Grossman's opinion is both more
12 *and* less restrictive than the opinions of the state medical expert, Dr. Lorber, and the state medical
13 consultant, Dr. Han. [17-1 at p. 7.] Defendant argues the ALJ has the authority to discount the opinion
14 of an examining physician where the opinion is contradicted by the record. Specifically, Defendant
15 argues the ALJ's decision as to Plaintiff's sitting capacity, which states she can sit for six hours in an
16 8-hour workday for 30 minutes at a time with the ability to change her position, is consistent with the
17 medical evidence and therefore must be upheld. [20-1 at p.8.]

18 If an examining physician's opinion is contradicted by another physician's opinion, an ALJ
19 must provide specific and legitimate reasons to reject it. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th
20 Cir. 2005). In the ALJ's written decision he explained that he gave limited weight to the report of Dr.
21 Grossman, Plaintiff's qualified medical examiner for worker's compensation purposes, because the
22 report conflicted with the residual functional capacities recommended by the state consultant and state
23 medical expert. [AR 31] For example, Dr. Grossman indicated Plaintiff could "stand and/or walk *for*
24 *less than four-hours* in an 8 hour workday" while the state medical expert, Dr. Lorber, opined Plaintiff
25 could stand and walk for *two hours* in an 8-hour workday for 30 minutes at a time. Dr. Grossman also
26 opined Plaintiff could "lift and carry *20 pounds occasionally* and 10 pounds frequently" while the state
27 consultant, Dr. Han, recommended a limit of "occasionally and frequently lift and/or carry *10*
28 *pounds*." [AR 31] After a comparison of the standing/walking and lifting capacities, it is clear why

the ALJ described Dr. Grossman's opinion as excessive: the upper limits of the standing/walking and lifting capacities Dr. Grossman recommended exceed those of the state medical expert and the state medical consultant. Nevertheless, the opinions of non-examining physicians like Drs. Lorber and Han cannot by themselves constitute substantial evidence that justifies the rejection of the opinion of an examining physician *unless* the opinions are consistent with and supported by other independent evidence in the record. *Lester*, 81 F.3d at 830-31; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ explained that he "struck a balance between the opinions of the State agent and the medical expert" because the medical record indicates the "time restraints and the limitations pertaining to the lower extremities described by Dr. Lorber are appropriate *given the claimant's radiculopathy, her weight, and her symptoms associated with the diabetes mellitus*." [AR at 30, 31; *see also* AR 942-50, AR 1289, 161-62, 1284-85] Similarly, the ALJ found the "lifting limitations identified by Dr. Han are most appropriate *given the ongoing back symptoms*" documented in the medical record. [AR 30; see also AR 1242, 1251, 1258, 1266, 1346-50, 1379-71, 1446, 1672-77] The ALJ is responsible for resolving conflicts in the medical evidence and the ALJ's reasonable interpretation of the evidence must not be second-guessed. *See Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). **IT IS THEREFORE RECOMMENDED** that the Court find the ALJ properly applied less weight to the opinion of Dr. Grossman for specific and legitimate reasons supported by substantial evidence.

### 3. Dr. Spoonamore (Treating Physician)

The opinions of treating physicians are generally given greater weight than those of other physicians because of the treating physicians' intimate knowledge of the claimant's condition. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001). Further, in order to reject the opinion of a treating physician, the ALJ is required to show specific and legitimate reasons based on substantial evidence in the record. *Id.*; *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the opinion is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting such testimony. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1285, *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). However, where the ALJ fails to provide

1 adequate reasons for rejecting the treating physician's opinion, the court will credit the treating
2 physician's opinion as a matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

3 As explained above, in order to reject the opinion of a treating physician, the ALJ is required
4 to show specific and legitimate reasons based on substantial evidence from the record. Here, the ALJ
5 explained his reasoning as follows:"At another time, ... [Dr. Spoonamore] stated the claimant could
6 not sit for more than 15 minutes at a time or stand for longer than 10 minutes....These restrictions are
7 contradicted by other sources. In addition, the opinion is also made before the claimant was
8 permanent and stationary and was intended as temporary limitations for workers' compensation
9 purposes. Therefore the opinion is given very little weight."

10 While acknowledging that contradicted treating sources are not entitled to controlling weight,
11 Plaintiff nevertheless argues the ALJ should not have afforded "very little weight" to the February 7,
12 2007 report of Plaintiff's treating physician, Dr. Spoonamore. Specifically, Plaintiff contends Dr.
13 Spoonamore's report was not meant to be temporary in nature and instead indicates Plaintiff's
14 permanent disability status. [ECF No. 17-1 at p. 11.] Defendant argues Plaintiff's interpretation of Dr.
15 Spoonamore's report is flawed in that Dr. Spoonamore's opinion clearly states Plaintiff's disability
16 status as "temporarily totally disabled." In addition, Defendant notes Dr. Spoonamore's opinion is
17 contradicted by Plaintiff's own examining physicians in medical reports issued both *before and after*
18 the February 7, 2007 report. [ECF No. 20-1 at pp. 8-9.]

19 The Court has reviewed Dr. Spoonamore's evaluation and confirmed that the February 7, 2007
20 report clearly states Plaintiff's disability status as "total temporary disability for two months." [AR
21 902] By its own language, Dr. Spoonamore's report was only intended to cover a temporary two-
22 month period. The ALJ explained this view in his decision stating: "The term "temporarily totally
23 disabled' is used in worker's compensation law to indicate a worker is unable to return to work *at a*
24 *certain moment or period in time*; or that the employer is unable to accommodate the claimant's ability
25 to perform modified work...." [AR 31] (italics added). Moreover, despite the ALJ's erroneous
26 assertion in his decision that Dr. Spoonamore's report was issued *before* Plaintiff was considered
27 "permanent and stationary" for purposes of worker's compensation, it is clear from the entire decision
28 that the ALJ also considered the medical opinions of Plaintiff's own examining physicians which are

dated before and after Dr. Spoonamore's February 7, 2007 report and the ALJ decided those opinions were a more accurate assessment of Plaintiff's overall capabilities. *See Magallanes v. Bown*, 881 F.2d 747, 751 (9th Cir. 1989) (The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.")

Specifically, the ALJ referred to the capacities cited in Dr. Grossman's May 4, 2006 report [AR 948] and Dr. Jackson's December 29, 2008 report [AR 1172] in his decision, both of which indicate Plaintiff had the capacity to stand and sit for much longer than the brief 10-15 minute period recommended by Dr. Spoonamore.[3] The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data *and* is consistent with other evidence in the record. *See* 20 C.F.R. 404.1527(d)(2). Contrary opinions of examining physicians may serve as additional specific and legitimate reasons for assigning a lower weight to the opinion of a treating physician. See *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff further argues the ALJ should have considered others factors in addition to contradictory medical sources before assigning very little weight to Dr. Spoonamore's opinion as instructed by 20 C.F.R. section 404.1527(d)(2). Other factors the ALJ could have considered include: supportability of the opinion, consistency with the record as a whole, and the nature and extent of the treatment relationship. 20 C.F.R. 404.1527(d)(3)-(6). In fact, the ALJ did consider these additional factors as noted in his written decision when he explained the 10-to-15 minute limitation was not supported by the record as a whole, was intended for worker's compensation purposes and reflected a temporary treatment option. **IT IS THEREFORE RECOMMENDED** that the Court find the ALJ provided specific reasons supported by substantial evidence in the record to apply very little weight to the temporary opinion of Plaintiff's treating physician, Dr. Spoonamore.

///
///
///
///

---

[3] Dr. Grossman indicated Plaintiff could "stand and/or walk *for less than four-hours* in an 8 hour workday" [AR 948] Dr. Jackson stated Plaintiff should be precluded from "*prolonged*" sitting or standing. [AR 1172]

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, **IT IS HEREBY RECOMMENDED** the Court **DENY** Plaintiff's motion for summary judgment and **GRANT** the Commissioner's cross-motion for summary judgment.

**IT IS ORDERED** that no later than **November 21, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties no later than **December 5, 2012**. The parties are advised that failure to file objections within the specified time may result in waiver of the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); see also Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: November 7, 2012

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court